## Paris Savings & Loan Association, Defendant in Error, v. Margaret Shea, Plaintiff in Error.

Mortgages—*what credited against indebtedness.* A fund designed to be applied towards the reduction of a mortgage debt will not in equity be allowed to be diverted to the injury of a party in interest.

Foreclosure. Error to the Circuit Court of Edgar county; the Hon. W. B. Scholfield, Judge, presiding. Heard in this court at the November term, 1910. Reversed and remanded. Opinion filed May 26, 1911.

F. W. Dundas, for plaintiff in error.

Frank T. O'Hair, for defendant in error.

Mr. Presiding Justice Puterbaugh delivered the opinion of the court.

This writ of error is prosecuted to have reviewed a decree of foreclosure under a real estate mortgage executed by Johanna Fitzpatrick and Margaret Shea to the complainant, to secure the payment of a loan of $600. As additional security for such loan, and in accordance with the by-laws of the complainant association, said parties, together with John Shea, the husband of Margaret Shea, assigned to the complainant six shares of the capital stock of Series B of said corporation, which had been issued to them jointly; also an agreement by which the holders of said stock agreed to pay all stock dues, premiums and interest upon the loan, until such time as said shares should reach their par value. Both the mortgage and said agreement provided that if the mortgagors should fail to pay said dues, premium and interest, for a period of six months, said mortgage might be foreclosed.

The mortgaged property in question was owned by Margaret Shea, subject to the life estate of Johanna Fitzpatrick, her mother. John Shea, who held an inchoate right of dower in the premises, as the hus-

band of Margaret, died shortly after the mortgage was executed. From the time the loan was made in July, 1894, until September 26, 1902, Mrs. Shea and Mrs. Fitzpatrick continued to make the payments required by the stock agreement and mortgage, each furnishing one-half of the necessary money, the proceeds of the loan having been divided equally between them.

In September, 1903, at which time dues and interest had been paid up to and including the month of April, 1902, and the value of the stock was $566, Mrs. Fitzpatrick, without the knowledge or consent of Mrs. Shea, withdrew the additional sum of $500 from the complainant, and out of the same paid six months dues and interest to November, 1902, thereby increasing the value of the stock to $588.20, being within a few dollars of the amount due upon the first loan with interest. She at the same time procured one share of the stock to be cancelled and the remaining five shares to be transferred to a different class, thereby reducing the monthly dues and further deferring the maturity of the stock. She then reported to Mrs. Shea that she had settled in full with the complainant. In November, 1903, at which time the transferred shares had reached the value of $102, she withdrew their full value in cash. From September, 1903, until June, 1905, she personally paid the dues and interest upon the stock. A conservator was then appointed for her, who thereafter until her death on February 7, 1907, paid interest only upon the loan. After Mrs. Fitzpatrick's death, Mrs. Shea paid the complainant the sum of $14 but declined to make any further payments, and the present bill to foreclose followed.

The chancellor found that there was due on account of the original loan the sum of $632.70, and that there should be credited upon the same, payments to the extent of $135, leaving a balance of $497.70, for which a decree of foreclosure was entered. There is no controversy as to the amount paid in to the complainant, the amount borrowed, or the amount withdrawn.

It is contended by plaintiff in error that the complainant had no right to permit Mrs. Fitzpatrick, without the consent of the joint owners of the stock, to withdraw from the association any part of the accumulated dues and dividends paid in by them, and that the full value of the stock certificates should be applied in liquidation of the mortgage indebtedness. Defendant in error contends that the dual relation between it and the borrowing stockholders is such that their respective rights thereto and interests therein, as among themselves, are not involved in the present proceeding, and that either of them had the right to make such withdrawals. Conceding, as contended, that a borrowing member of a building and loan association sustains a dual relation toward such association, each relation independent of the other, and that payments of dues upon stock are not payments upon and do not *ipso facto* extinguish so much of the mortgage indebtedness; and conceding further, that such stockholders could, acting jointly, with the consent of the association, withdraw at any time any portion of the joint fund created by their payments upon stock dues, we are, nevertheless, of opinion that in equity the payments made upon the stock in question should be credited upon the mortgage debt. It was undoubtedly understood by Mrs. Shea that under the contract, all payments made should and did reduce the mortgage debt, unless she and her co-stockholders saw fit, acting jointly, to withdraw the value of the same. The fund created by such payment was the joint property of such stockholders, and neither had the right, without the consent of the others, to divert it from the purpose contemplated. The defendant association wrongfully allowed Mrs. Fitzpatrick so to do, without the knowledge and consent of Mrs. Shea and in utter disregard of her rights. To permit it now to say that such funds should not be applied as was obviously intended, would be palpably and grossly inequitable.

The present decree is accordingly reversed and re-

manded with directions to the Circuit Court to credit upon the mortgage debt the value of the stock in April, 1902, which is admitted to have been $566.12, and the sum of $14 paid by her to the association after the death of Mrs. Fitzpatrick.

*Reversed and remanded.*